163  201
164  426

## Wm. E. Eichenlaub, Appellant, *v.* Fred. B. Hall.

*Fraud—Evidence—Question for jury.*

Two persons, partners in the fishing business, owned a vessel in common. One of the partners sold and assigned all his interest in the firm and its property to his copartner, the plaintiff. Four days before this assignment the retiring partner had executed a bill of sale to his brother-in-law, the defendant, of his interest in the vessel. The brother-in-law was a clerk at a small salary, had never been in the fishing business and had no acquaintance with it; made no examination of the boat, and no inquiry as to its value, or its earning capacity. He gave a judgment note for an amount equal to nearly two years of his entire salary and paid nothing, though he got a bill of sale which recited the payment of the price in hand in lawful money. Defendant knew that the boat was part of the assets of the firm. *Held*, that the evidence was sufficient to submit to the jury as to the bona fides of the sale.

· *Registration of vessel—U. S. Statutes.*

In the above case the fact that the sale to defendant was registered was immaterial.   The registry act is for the protection of bona fide purchasers, not others.   Defendant made his purchase first; if it was in good faith he got a good title, with the statute or without it; if it was fraudulent he got no title at all as against plaintiff, and the statute would not help him.

Argued April 23, 1894.   Appeal, No. 11, July T., 1893, by plaintiff, from judgment of C. P. Erie Co., May T., 1891, No. 157, on verdict for defendant.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Reversed.

Replevin for steam tug.   Before GUNNISON, P. J.

At the trial it appeared that plaintiff and Frank L. Montgomery were partners in the fishing business, trading under the name of the Erie Fish Co.   They owned in common the vessel in dispute.   On March 27, 1891, Montgomery sold and assigned to plaintiff all his interest in the partnership, and the property belonging to it.   Four days before this sale, on March 23, 1891, Montgomery, without the knowledge of his partner, executed a bill of sale for his interest in the tug to defendant, who was his brother-in-law.   The evidence showed that defendant knew that the tug was part of the partnership property; that he paid no money down, although the bill of sale to him recited the payment of the price in hand in lawful money.   It also appeared that he was a clerk at a small salary, had never been in the fishing business, and had no acquaintance with it; that he made no examination of the boat, and no inquiry as to its value, or its earning capacity; and that he gave to Montgomery a judgment note for an amount nearly equal to two years of his entire salary.   The bill of sale to Hall was registered at the custom house.

Binding instruction for defendant was given.

Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was above instruction.

*F. F. Marshall,* for appellant.—A ship, like any other chattel, may be held in partnership and constitute a part of the stock of the firm, and then all the powers, duties and obligations of the owners towards each other will be determined by the law

of partnership: 1 Parsons's Maritime Law, p. 83; Mumford v. Nicoll, 20 Johns. 611; Phillips v. Purington, 15 Maine, 425; Seabrook v. Rose, 2 Hill, Ch. 553.

As between partners themselves, land held and treated by a firm as partnership property, especially if purchased and paid for with partnership money, is to be regarded as partnership assets, notwithstanding it was conveyed to the grantees as tenants in common: Warriner v. Mitchell, 128 Pa. 153; Collner v. Greig, 137 Pa. 606.

It was error to assume that, by defendant's testimony, the bona fides of his purchase was already established. At best, defendant's evidence tended only to make out a prima facie case; the jury had not passed upon it; and it was for them to determine the question upon all the evidence on both sides: Levy v. Cooke, 143 Pa. 607; Lowe v. Dalrymple, 117 Pa. 564; Neff v. Landis, 110 Pa. 204.

Clark Olds, for appellee.—The owners of ships are, generally speaking, tenants in common: Benedict's Admiralty, § 274.

It is well settled that one part owner or tenant in common of a vessel cannot maintain an action of replevin against another part owner: 1 Parsons on Maritime Law, 85; Barnes v. Bartlett, 15 Pick. 71; 1 Chit. Pl. 66.

While a vessel may be held in partnership, we deny that, after the owners have set forth, on the records of the custom house where the vessel belongs (under Revised Stat. §§ 4192, 4193, 4196), that they own the vessel as tenants in common, they can change the manner of ownership, so as to affect a bona fide purchaser of an interest therein, who had no notice of a different ownership than set forth on the records.

A plaintiff in replevin must recover upon the strength of his own title, not on the weakness of his adversary's: Reinheimer v. Hemingway, 35 Pa. 432.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:

The learned judge below, conceding that if the question were between plaintiff and Montgomery it would have to go to the jury, was of opinion that there was no sufficient evidence of knowledge or bad faith on the part of defendant, and therefore directed a verdict for him.

The case discloses a plain and very gross fraud on the part of Montgomery, and the use of Hall the defendant as the instrument for the perpetration of it.   Under such circumstances the question of fact always arises whether the person made the instrument was so used with his knowledge and consent, or was an innocent victim.   Generally this is a matter for the ·jury, for while they should not be permitted to draw conclusions from insufficient evidence, yet questions should not be taken away from them too easily, which depend on the inferences of knowlédge and motive from a number of acts capable of different interpretations.

The evidence in the present case points strongly to the conclusion that Hall not only knew of Montgomery's fraud, but participated in it.   It is true there is no one fact established which can be said to prove it, but fraud is rarely capable of proof in that way.   It is the chain of less direct circumstances all pointing the same way, until there seems no other reasonable mode of reconciling them, that must usually be depended on in reaching a conclusion.   The defendant was Montgomery's brother-in-law; he knew the boat was part of the assets of the Fishing Company, though the title may have been recorded in the names of the partners as tenants in common; he was a clerk at a salary of twelve hundred dollars; had never been in the fishing business, or had any acquaintance with it; made no examination of the boat, and no inquiry as to its value or its earning capacity; yet under such circumstances he gave a judgment note for an amount equal to nearly two years of his entire salary, and paid nothing, though he got a bill of sale which falsely recited the payment of the price in hand in lawful money.   If there is any explanation of such a transaction consistent with good faith, it should at least have the indorsement of a jury.

The registry act of ·the United States has very little to do with the case.   It is for the protection of bona fide purchasers, not others.   The defendant made his purchase first; if it was in good faith he got a good title, with the statute or without it; if it was fraudulent he got no title at all as against the plaintiff, and the statute will not help him.

Judgment reversed, and venire de novo awarded.